Please call the last case of the day. 2-12-11-10 Dan Wolf Toyota v. Francis O'Byrne Counsel, you may proceed. Good afternoon, your honors. May it please the court, counsel. My name is Francis O'Byrne from the law firm of Roddy Lake Will. I represent the appellant in this appeal from the circuit court. The standard of review that I will be arguing is the manifest way to the evidence as addressed in our briefs. There's a number of medical issues that I will not be addressing in my argument because they're in the brief. If need be, I can argue, I can address it. But I'm going to focus my argument on accident and TTD benefits. It is our position that there are two accidents. And that is based on the medical records. The medical report from Dr. Freeburg clearly states in two of his reports there are two accidents. The dates are, the date of the first accident is not real clear. But the date of the second accident, or the only date that is very clear, is June 30th, 2009. Why do I say that? Every medical report says June 30th, 2009. Every one. Even the last report, the very, very last report from the narrative from the treater. I mean, yeah, the treater, Dr. Freeburg says, well, he says June 30th. But it's referencing June 30th, at least that's my position. Because all of his reports say June 30th. And in that report he says 6-3, but it's in his prior report he said 6-30. Now, why is it significant? Well, it's significant because the rules governing practice before the commission state the application has to have one date of accident. It can only have one date. Whether it's repetitive trauma cases or any other case, the date of accident, you can only have one date. What is that date of accident? They have June 25th. Why is that significant, at least on our part? Because every medical report states June 30th. Every one. There isn't any report that doesn't say that date. Now, the last report does have two dates of accident. It first says 6-3, but referencing the prior report, which is 6-30. And then it says, and I'll just, rather than paraphrase, I'll just go to the report. Well, let me ask you this while you're doing it. Who's Michael Kratchmer? Michael Kratchmer is a supervisor. He's a service manager at Dan Wolf? Yes. Okay. Did they claim and report the incident to him? He reported a soft tissue injury to the back to him, yes. So are you disputing that, are you saying this accident never happened? The, no, I'm saying that he told them that he had hurt his back and that it resolved, that his condition resolved. That he went back to work and he needed no treatment. And there was no issue as far as any problems at work. He worked full duty from the time he told the service manager up until when he started treating, which was July 20th. Okay. There was no problem. There was no issue. But what does Dr. Freeberg say? Dr. Freeberg says he had gotten an injury, he went back, everything was fine, and then he had an aggravation. He had another injury. That injury resulted in a need for treatment. What's the date of that? June 30th. How do I know that? Every medical report says it. Every report. And what was that accident attributable to? What was it? He slipped, he slipped, well, at least, he didn't testify at all about June 30th. He just, he dodged that date because, why? It's got one application. He only talked about one date. The medical records talk about that date. The medical records say that he got out of a car and he fell and he hurt his back. That's the medical records, not his testimony. He did not mention that date. He stayed away from that date. I don't know why. I can only speculate. That's all I can do is speculate. What about if a claimant's confused about a date? Well, I was, that was on page C. I mean, assuming you have a point to make. What I said to him was, I asked him, on cross-examination, I said, would it be fair to state that the, well, I asked him if his memory was better now than it was before because he was, he had made inconsistent statements, and that's in the record, to the claims adjuster when I reported statements, and he made inconsistent statements during cross-examination. The same inconsistent statements. And I asked him. On what issue, the date? No, on what happened. He said, he told the claims adjuster, oh, I went back to work full duty, oh, I was taking, I was going into the cars, I was taking him in for oil changes. That was after he returned from Florida, after he had gone to Disney World. He said that, he told the claims adjuster there. And I said, wait a minute, you told the claims adjuster you were getting in and out of cars, you were taking him in for the oil changes, and he said, oh, wait, I was confused, I was confused. There was an objection by counsel, and the objection was overruled, stating, the arbitrator said, no, no, no, that's allowed, he's just asking what was stated. I didn't ask him those same questions. I didn't ask him the same questions. And guess what? He said the same thing to me. He said what he told the claims adjuster. The exact same thing. I asked him about when he returned from work after Florida, what were his job duties? Oh, they were all the same. Oh, he took cars in, he took cars out, he did oil changes. And then I asked him, did you need a scooter? I said, in fact, I think I said, explain to the arbitrator why you needed to rent a scooter in Florida, but you didn't need a scooter when you went back to work. And he said, oh, wait a minute, I needed a chair. And they gave me a chair. In fact, he said not only did they give him a chair, they gave him light duty, they let him do whatever he wanted to do. He said that they gave him paperwork. He said there were 265 customers a day. Let me ask you this. Is there a question in this case that the claimant suffered from a vascular necrosis? Yes. There is a question about that? Oh, no, no, no. Oh, no, no. There's no question. That's an issue in the case. Oh, no, there's no question. Absolutely had a vascular necrosis. All right. So then you're talking about the dates, he's confused. How does this tie in the argument? Are you trying to also say that he didn't have the condition? No, he had the condition. His argument is that he aggravated a preexisting condition. Okay. The medical speaks for itself. There's three doctors that say it didn't aggravate it, and there's one doctor that said, well, if, this is, I mean, if you look at Dr. Friedberg, what does Friedberg say? His first report, nothing. His second report, nothing. His third report, well, if he had complaints of pain, hip pain, when he went to the emergency room, then I would relate it to that. That's what he said. That's in his last report. That's the only opinion on causation. There's all this medical, and if you look at the medical. Causation in terms of aggravation? In aggravation, yes. That's what I mean. I apologize. I mean aggravation. When you look at the opinion on the aggravation of a preexisting condition, there is only one, it's only addressed in Dr. Friedberg's report. And that's addressed, it's July 27th, it shows up on C197, and that is addressed to a letter he received from counsel. All right. So what did your experts, didn't they believe the claimant had a preexisting condition? Yes. All of them said that. Okay. So your argument is there was no aggravation, or what is your? Right. Yeah. Dr. Fidani said absolutely no aggravation, and the other two doctors, Dr. Koh and Dr. Lewis, said that it was, it was, it was just a, it was at such a stage, stage three, that it was just a progression of his idiopathic condition. So there's three doctors that all say that it is not related to, he didn't, it's not work-related. One doctor said it's not an aggravation of a preexisting condition. The other two said it's just a natural progression of that condition. And an argument is, if, if this Honorable Court feels that there was an aggravation of a preexisting condition, what's the date of accident? June 30th. That's what every medical report says. What date did they put down? The first accident. Dr. Freeburg, in his first report, says he had two accidents. The first accident he had, he resolved, and he went back to work. Then he had a second accident. And after that second accident, he continued to have pain. That's, that's, that's what, that's what the record shows. The record shows he had, that he, he had a, he went back to work after, after he had a soft tissue back injury. Then he had another injury, and that's... At work? Well, he didn't say it happened at work, but, but the medical says it happened at work. You're talking about credibility attacks here. I'm also talking, yes, Your Honor. You're saying that, that the claimant was not credible about the date of the accident. But isn't that an issue for the commission to resolve? It should be an issue for them to resolve, yes. I would agree with that, Judge. I mean, you know, and, and they did. And... But, yes. Your only argument is how that's against the manifest weight of the evidence. And the arguments I hear you making are the kind of arguments you make to the trier of fact, the commission. I, I would have to agree... We're not the trier of fact. I would have to agree with you. But then, so is, is, is that against the manifest weight of the evidence? And my argument is absolutely. And what's the basis? Every medical report says June 30th. Every one. I mean, there isn't any report that says June 20, 25th. None. Until they, until he responds to a narrative from, from the, from the attorney. And he says, I will now take the questions in order, the questions. And one of the questions was about June 25th. And he says, is the patient's current diagnosis possibly related to June 25th, 2009 work injury? Yes. That's the only time he addresses that, that date. That's the only time. Why? Why is that significant? Because prior to that, he didn't have an opinion that it, that prior to that report, there was no opinion that there was an aggravation of a preexisting condition. Nobody said that. Nobody said that. If you look at Dr. Koh and Dr. Lewis, they didn't address that because it wasn't even brought up. It wasn't, I'm sorry. When he went to St. Alexis Medical Center on July the 20th of 2009, x-rays were taken. What was he complaining of? He was complaining of back pain. Back pain? Yes. And did he testify, he also told him he had hip pain? He testified that he had back pain going into the hips, both hips. Okay. Yes, Your Honor. And what did Freeberg say if he had told the people at St. Alexis possible he had hip pain? He said that if he said that he had hip pain, then he would feel that it was an aggravation of a preexisting condition. Okay. That's what he said. Why isn't the commission entitled to believe both him and then use Freeberg's opinion as a basis of their decision? In response, Your Honor, he had back pain that went, that traveled to the hips. He didn't say he had hip pain. He had no treatment for the hips until. If pain travels to the hips, it occurs to me you have pain in your hips. Technically, yes, I would agree with that. But just as a follow-up, Your Honor, he didn't have any treatment for the hips until he was seeing Dr. I think it was in August of 2009. I mean, I can't disagree with you on that. But what if, again, I point out, if you look at that opinion of Dr. Freeberg, you know, it came after he had already seen him on two occasions and after he had gotten a letter to do a summary of it. And is his opinion based on a reasonable degree of medical and surgical certainty? No, it says if, if. That's his opinion. But what's the date of accident? June 30th. Did you make these arguments before the commission? Yeah, I did. Okay. Yeah, I mean, I, I fought, we fought this whole case. We fought this whole case. And we've been fighting it the whole way. We, we agreed to a soft tissue case and that's all we paid. And that's all we paid. That's why we wanted, we actually, our argument was that we overpaid TTD. We paid too much TTD. We were asking for credit because we were like, wait a minute. This, this condition is not related to, to, to that, to that second accident. And if, if, now, if there's a, if there was a second accident and a second date, it's a different scenario. But I'm only, I can only deal with one day of accident and that's June 25th. And when I look at the records, I, I can't find anything that says that. So if, you know, just, just, just in summary, it, we, there, there is, even if this court can find, I'll, I'll even strike that, let's go to the TTD issue. How could, how could the, how could the arbitrator award any TTD on this case? He testified that they accommodated his light duty, that they did everything that they can in, in their power to give him light duty. They gave him paperwork. And even the arbitrator, the arbitrator's decision, I don't even understand, the arbitrator said, petitioner provided no test, no testimony other than evidence with respect to the availability of light duty work, either respondent or elsewhere following the light duty release. He testified to that. Respondent didn't have to bring up anything about light duty. He said that they accommodated him. His release from the doctor was light duty. How could any TTD be awarded on this case? And, and I'm assuming that if we, if we completely lose on this case, there, there can't be any TTD awarded. And if it is awarded, it would be on the June 30th date of accident. But, but even if we, again, you know, arguing the alternative, if we're wrong, he was working light duty. Did, did he testify that they didn't have light duty? No. He testified they did. Why did he stop working? He just, he went, he moved to, all that we have is he moved to Oklahoma. Counselor, your time is up. Okay. Thank you. May it please the court. Counsel, my name is Joshua Rodolfi and I represent the appellee, Kevin McLennan, in this case. Counsel is right about one thing. This case does involve questions of fact. Therefore, the manifest way to the evidence standard does apply. Can you, we spent a long time, you gave a very impassioned argument, continuing to come back at every point about the dates of the accident. Can you comment on his arguments on that? Absolutely, Your Honor. The date of the accident was never put in dispute. If you look at page, page 57 of the record, the date of accident of June 25th was stipulated by the parties. It was? It was. It was never put in dispute at the time of trial, nor was it in dispute at the commission level. I'm glad that counsel actually did cite the rules governing practice before the Illinois Workers' Compensation Commission, because there's also a rule that says you can only argue issues that are either raised on the stipulation sheet and contained within your statement of exception. But he's never argued this before the commission? This is a novel argument that came about in the circuit court out in Wheaton. It was rejected there. I ask that this court reject it as well. It's a moot point. It was stipulated to. To find otherwise would vitiate the intent and the purpose behind requests for hearing forms. Can I ask you two questions? Absolutely. Did he testify when he went to St. Alexis Medical Center in whatever date he went in, July, that he had pain in his hips or he had pain in his back radiating to his hips? Is that what he told them? He testified at trial that, yes, he complained of low back pain as well as hip pain in his right hip at that time. And what was Freeberg's opinion on causation? If I may read it to you, Your Honor. Yeah, read it. If the petitioner did have a right hip problem at the time of his visit to St. Alexis Emergency Room, that is inserted by me, that's what he's referring to, then that would be an exacerbation of the preexisting avascular necrosis with an extension of the effusion within the hip with the subsequent problems that he is experiencing. To that end, the necessity of his total hip arthroplasty is correlative to the patient's falls where he did have an acute onset of pain and problems. Now, counsel does talk about St. Alexis Medical Center. Pages 132 of the record through 135 of the record contain the initial visit to the emergency room. He complains of low back pain with bilateral hip pain right greater than left. That is exactly as Dr. Freeberg is saying. Dr. Freeberg is positing a logical sentence. If that, if this is true, this is true. If he had pain at St. Alexis Emergency Room, then it's an exacerbation and aggravation of a preexisting condition. This condition is met. Therefore, this is also true. Now, the other thing I would like to point out about counsel's briefs is simply that he cites the case of Sisbro at one point, which is a controlling Supreme Court case that governs all these facts. He cites it for the proposition that the petitioner has to prove his injury by preponderance of credible evidence. It must show that he sustained an accident that arose out of and in the course of his employment. He doesn't say anything about the standard of law here, which is merely that you have to show that the accident was A, causative factor. Not B, not the primary. A, causative factor. If you look at the facts and draw the same reasonable inferences that the commission drew and that the arbitrator drew as well, you can see that it was A, causative factor. He doesn't have avascular necrosis in one hip. He has it in both. He has it bilaterally. If you look at this from a scientific perspective, you've got two hips, both with avascular necrosis. This is your baseline. This was Mr. McGlennan's baseline on June 25th when he sustained his undisputed accident. You insert one variable to the right hip. You insert the trauma of the undisputed accident. This hip is symptomatic. This hip, the left, which did not sustain the direct trauma, still has avascular necrosis but remains asymptomatic. The commission and the arbitrator drew the inference that it was A, cause, if not B, cause, of Mr. McGlennan's current condition of ill-being. All this talk about multiple accidents, multiple falls, it's hogwash. I don't even know why we're addressing it today. It was not brought up in trial. It was not brought up at the commission. It was a throw-in, kitchen sink argument made at the circuit court level, which was rejected. The circuit court put forth a single-page order. There was an adequate basis in the record to sustain the commission's decision. That is the standard here. Manifest way to the evidence. It's not merely this court agrees with the decision below, but if there's an not shall, not should, it must be affirmed in its entirety. There is an adequate basis here. Counsel argues in his brief that Dr. Freeburg did not reach a conclusion with causation. We just went over that. He did. If there was pain at St. Alexi's Medical Center, then it's an exacerbation of a preexisting condition. There cannot be any serious dispute as to that. Regarding the T2D dates regarding Mr. McGlennan's testimony, which Counsel Swalwick pointed out, when he came back, first of all, he was injured in an undisputed. He went to Florida with his kids. Went to Walt Disney World. Testified credibly, which, by the way, the commission, not simply rubber-stamping the arbitrator's decision, specifically expanded on it, saying he was credible based on the totality of the record. He testified credibly he needed a scooter to get around because of his hip and low back pain when he was down in Florida. When he got back, all this talk about full duty, light duty, those are legal terms. My gentleman went back to work. He continued to work his job. They provided him the assistance of a chair, which, by the way, is exactly what the commission expands upon and says he testified credibly to. There's no light duty restrictions on him at that time. The first time there's any restrictions on him is when he sees Dr. Freeburg. Dr. Freeburg says, well, based on your hip MRIs, there's no salvage procedure available. You need a total hip arthroplasty, and I'm taking you off work until you get that surgery. That's when the TTD date started, and those are the TTD dates that were awarded by the commission. The next time the TTD is cut off is when he returns to Dr. Freeburg and says, Dr. Freeburg says, you can return to work light duty. He was no longer working for Dan Wolf Toyota, and there's nothing in the evidence to suggest that he went and tried to go back to work at that time. I'm not going to sit here and tell you to continue the period of TTD for that time with the testimony that's on the record. The commission properly cut off TTD at that time. Counsel argues in his brief about interstate scaffolding, that you can only collect TTD as long as you're submitting to medical examinations, as long as you're continuing your medical treatment. What happened between Mr. McGlennon going to Dr. Freeburg for the first time and being taken off work, and then going back months later and being put back to work light duty? Well, he wasn't treating with a physician, and why is that? He was being sent to not one, not two, but three independent medical evaluations. If at first you don't succeed, try, try again. The first two medical evaluations, Dr. Jeffrey Koh and Dr. Michael Lewis, what did they say in this case? They didn't help at all. The respondent knows that. That's why they went to Dr. Fadani. Dr. Koh and Dr. Lewis use a medical standard. They don't use the legal standard. They don't know about CISPR and its progeny dating back to Caterpillar. No. They say the fall did not cause the avascular necrosis. I'm not that great of an attorney to sit here and explain to you that it did. It didn't. It preexisted. We all know that. The only doctors that say anything about the legal standard here are Dr. Fadani and Dr. Freeburg. Again, if, then, with Dr. Freeburg. With Dr. Fadani, he simply says it didn't accelerate. It likely would have happened sometime in the future. Unfortunately, that legal argument has been rejected by this Court and also by the Supreme Court. So there's no doubt about that. Further, the Commission, it's well within their province to judge a credibility of witnesses and to resolve conflicts of medical evidence. They did that. They deemed the petitioner credible. They resolved the conflict between the only two medical opinions that actually mean anything in this case, Dr. Freeburg, Dr. Fadani. They chose to believe Dr. Freeburg. Is there an adequate basis for that? Absolutely. It's not against the manifest weight of the evidence. It cannot be clearly said that it's against the manifest weight of the evidence, and I don't even know why we're here today, in all honesty. With that, I respectfully request that the lower court's decision be affirmed in its entirety. Thank you. Thank you, counsel. Counsel, you may reply. Counsel, you know I have to ask you, did you stipulate the date of accident before the Commission? Oh, absolutely. Absolutely. But what's so troublesome to you now, why wasn't it troublesome to you in perplexing back then? Judge, I stipulated to June 25th. Yeah. Because that was a soft tissue back injury. That's why I stipulated to it. All the records said 6-30. I absolutely positively stipulated to that. We paid the medical and we paid a TTD. Okay, you're going back to your two-accident theory. Right. Yeah, because. That there's a conspiracy going on here. There were two accidents that, you know, he's hiding. Dr. Freeburg said that. Dr. Freeburg said he got, after his first accident, he recovered and went back to work. Then he had a second accident and he had all the problems. The second accident is June 30th. That's what we stipulated to June 25th. None of that's that clear, though, either, is it? I mean, don't Freeburg's records say it was like a month before? I mean, you want to put five days between? Well, yes, he did. He did. But if you look at all the medical records based on what the petitioner told them, they're all, none of them make any sense. Petitioner told them all this. Don't we see that in these cases all the time and the commission makes determinations of credibility? You know, people don't report absolute accurate histories. Doctors and nurses don't take down what they say completely accurately every time. Yes. And the commission has to resolve all that. Yeah, I would completely agree with you. But by agreeing with you, there's still two days. There's still, what are the two days? June 25th and June 30th. I mean, the only date that's clear is June 30th. You stipulated the 25th. I did. And the commission found he was injured on the 25th. Yeah. But then they tied, they found that he was injured on the 25th. We have no problem with that because he had a soft tissue back injury, which resolved. Who said that? The doctor. But you're saying everything goes back to the 30th. Right. And why do I say that? Every report says that. Every report. And just as a follow-up to that, Your Honor, if this court feels that it's June 25th instead of June 30th, which we disagree, it's still, he's got a light-duty job. He's got light-duty restrictions that were given to him of 25-pound lifting restriction. He testified that they gave him light-duty. He was working light-duty. At no time was that taken away. So he would, there's nothing in the record that would allow him any TTD benefits. He quit. Now, he didn't say he quit. He said, I moved to Oklahoma. But there is no testimony that he asked for light-duty and they said no or they didn't offer him. The only testimony in there is his testimony that says they gave me light-duty. They accommodated my restrictions. They gave me a chair. They gave me paperwork. How could he possibly be entitled to TTD benefits based on that testimony? So, but, you know, again, I go back to we believe it's, that there's two accidents. If this court believes that there's one accident, then I would argue that he cannot, that there's nothing, there's nothing in the record that allows him any TTD benefits. And the period of time that the counsel was arguing about that he was taken off work to have surgery, that Dr. Freeburg said, you know what, I think you need surgery, I'll take you off work for surgery. He didn't have the surgery. He moved to Oklahoma. And then when he came back, the doctor's report clearly says nothing's changed, everything's identical, you can work light-duty. Nothing, I mean, nothing is, nothing changed from when he, when he first saw Dr. Freeburg. So he was light-duty. He was always light-duty. The only time he wouldn't be light-duty is if he was going to be having surgery. He didn't have the surgery. He moved to Oklahoma. We don't, I don't know what happened in Oklahoma. I think I did ask him if he had treatment there, and I think he said no, because I don't think there was anything in the record. So we would ask that this, that this, you know, the circuit court decision be reversed in its entirety. If not, then it should be reversed at least with the TTD issue because of the medical. Thank you. Okay. Thank you, counsel, both for your arguments. This matter this afternoon will be taken under advisement. Then this position shall issue. The court will stand in recess until 9 a.m. tomorrow morning.